**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | 18-21-SDD-RLB |
| TRAVIS R. JAMES, ET AL. | |

**RULING**

This matter is before the Court on the *Motion to Suppress Wiretap Interceptions* filed by Defendant Michael Nelson ("Nelson")[1] and Defendant Troy James ("James").[2] These motions were adopted by co-Defendants Travis R. James, Joshua J. Mansion ("Mansion"), and Harris Hampton, III ("Hampton").[3] The Government has filed an *Opposition*[4] to these motions. For the following reasons, the motions are DENIED.

**I. BACKGROUND**

This criminal action arises out of an *Indictment* charging fifteen Defendants in a drug conspiracy to distribute and to possess with the intent to distribute illegal narcotics between around January 2015 and continuing until around January 2018 in the Middle District of Louisiana and elsewhere.[5] As a result of an ongoing investigation by the Drug Enforcement Administration ("DEA") and local law enforcement agencies into alleged narcotics trafficking by these Defendants, the Government applied to intercept wire and electronic communications occurring over several cellular telephones, beginning in March

---
[1] Rec. Doc. No. 208.
[2] Rec. Doc. No. 215.
[3] Rec. Doc. Nos. 229, 231, 232, & 233.
[4] Rec. Doc. No. 252.
[5] Rec. Doc. No. 1. *See Superseding Indictment*, Rec. Doc. No. 334.
Document Number: 50386

2017, pursuant to 18 U.S.C. § 2516.[6] On March 27, 2017, then-Chief Judge Brian Jackson approved the Government's application to intercept wiretap and electronic communications occurring over cellular phone number (225) 202-9235, referred to as TARGET TELEPHONE, used by James Christian Hull ("Hull").[7] On April 25, 2017, Judge James Brady granted the Government's request for a thirty-day extension to intercept communications used by Hull over TARGET TELEPHONE 1, which was the same phone number and phone associated with TARGET TELEPHONE.[8] In this extension request, the Government advised the Court that the Confidential Source ("CS") upon which the Government had relied in its first application had become unreliable.

The Government notes that neither the application nor the extension request identified Nelson, Travis James, Troy James, Hampton, Mansion, or Kim Murphy ("Murphy") as targets of the investigation. Further, during the wiretap of TARGET TELEPHONE/TARGET TELEPHONE 1, the Government claims that federal law enforcement did not capture any communications to or from Nelson, Travis James, Troy James, Hampton, Mansion, or Murphy.[9]

On April 20, 2017, Chief Judge Jackson granted a second application by the Government to intercept wiretap and electronic communications occurring over TARGET TELEPHONE 2 and TARGET TELEPHONE 3 used by Byron A. Lawson.[10] This application did not identify Nelson, Travis James, Hampton, Mansion, or Murphy as

---

[6] Rec. Doc. No. 252-1.
[7] *Id.*; Rec. Doc. No. 252-2.
[8] Rec. Doc. No. 252-3.
[9] Rec. Doc. No. 252 at 2. The Government notes that Nelson and Troy James concede this fact in their respective motions.
[10] Rec. Doc. Nos. 252-5 & 252-6.

targets; however, during this time period, the Government intercepted communications between Nelson and Travis James over TARGET TELEPHONE 3.

On May 6, 2017, Judge Brady granted the Government's application to intercept wiretap and electronic communications occurring over TARGET TELEPHONE 4 and TARGET TELEPHONE 5 for a thirty-day period.[11] The *Order* authorizing the interceptions pursuant to this application **did** identify Travis James and Troy James, a/k/a "Big Bro Troy," among others, as targets. On May 6, 2017, Judge Brady approved a thirty-day extension request to continue intercepting communications occurring over TARGET TELEPHONES 4 and 5.[12] The *Order* authorizing these interceptions identified Travis James, Troy James, Hampton, Nelson, and Mansion as targets, and law enforcement intercepted their communications, as well as Murphy's, occurring over TARGET TELEPHONES 4 and 5.

On May 27, 2017, Judge Brady granted the Government's application to intercept wiretap and electronic communications occurring over TARGET TELEPHONE 6, used by Travis James. The application and *Order* authorizing the interceptions identified Travis James, Troy James, and Hampton as targets.[13]

## II. ARGUMENTS

Nelson has moved to suppress the wiretap interceptions in this case. Nelson challenges the Government's interception of communications occurring over TARGET TELEPHONE/TARGET TELEPHONE 1 for lack of probable cause on the basis that the Government's first application was based on information from a confidential source later

---

[11] Rec. Doc. Nos. 252-7 & 252-8.
[12] Rec. Doc. Nos. 252-9 & 252-10.
[13] Rec. Doc. Nos. 252-11.
Document Number: 50386

found to be unreliable. Nelson also contends that the Government's applications were defective because it failed to follow its statutory duty to consider alternative, traditional investigative techniques to achieve the objectives of this investigation. Thus, because Nelson contends the communications intercepted over TARGET TELEPHONES 3, 4, and 5 are fruits of the unconstitutional and unlawful interception that occurred over TARGET TELEPHONE/TARGET TELEPHONE 1, all intercepted communications should be suppressed.

The motion to suppress by Troy James asserts these same arguments; however, Troy James contends he has standing to challenge the interception occurring over TARGET TELEPHONE 1. Troy James contends that the information gained from the unlawful wiretap of TARGET TELEPHONE 1, based on an unreliable confidential informant, led to the authorization to intercept the communications occurring over TARGET TELEPHONES 4, 5, and 6, and these communications should be suppressed as unlawful fruits of the poisonous tree. Troy James also argues that the application failed to identify the individual operating as "Big Bro Troy"; thus, there was no probable cause to link him to "Big Bro Troy."[14]

The Government opposes the *Motions to Suppress*, arguing that the Defendants lack standing to challenge the application for TARGET TELEPHONE/TARGET TELEPHONE 1 as they were not targets of this investigation, and no communications intercepted pursuant to this application were theirs; thus, they cannot suppress the subsequent wiretaps under the fruit of the poisonous tree doctrine. The Government also

---

[14] Rec. Doc. No. 215-1 at 6, 9-10.
Document Number: 50386

contends that the supporting affidavit provided sufficient probable cause to believe that drug trafficking conversations were occurring over TARGET TELEPHONE/TARGET TELEPHONE 1 because, notwithstanding the fact that CS was later found to be unreliable, the affidavit was based on information provided by CS that was corroborated on several occasions by law enforcement. Addressing Troy James' argument that he was not sufficiently linked to the name "Big Bro Troy," the Government cites Supreme Court jurisprudence and argues that the failure to identify a target in a wiretap application, where probable causes exists to do so, does not warrant suppression.[15] The Government further argues that it satisfied the necessity requirement in seeking the wiretap application. Finally, the Government maintains that the agents relied in good faith on the sufficiency of the wiretap warrant; thus, the good faith exception would apply to the exclusionary rule in this case.

### III. LAW AND ANALYSIS

Title III of the Omnibus Crime Control and Safe Streets Act of 1968[16] ("Title III"), governs the interception of wire, oral and electronic communications by the government and private parties. Title III broadly prohibits all wiretapping and electronic surveillance conducted by persons other than law enforcement officials engaged in the investigation of specified crimes after obtaining a court order.[17]

#### A. Standing

Section 2518(10)(a) of Title III states that any "aggrieved person" may move to suppress the contents of any wire or oral communication intercepted pursuant to Title III,

---

[15] Rec. Doc. No. 252 at 11 fn. 23.
[16] 18 U.S.C § 2510, *et seq*.
[17] *See* 18 U.S.C. § 2511.
Document Number: 50386

or any fruits derived therefrom, on the grounds that the communication was unlawfully intercepted or was not made in conformity with the authorizing order.[18] An "aggrieved person" for Title III purposes is one who is either (1) a party to any intercepted communication, or (2) a person against whom the interception was directed.[19]

Although Title III contains this express standing provision, courts have long recognized that the intent of Congress was to apply the existing law of Fourth Amendment standing to wiretap cases.[20] Relying on this Congressional intent, courts have continued to construe Title III standing in accordance with standing requirements applied to suppression claims under the Fourth Amendment.[21] Thus, one does not become an "aggrieved person" under Title III solely by the introduction of damaging evidence.[22]

Nelson, a subject of interceptions of TARGET TELEPHONES 3 and 4, contends he has standing as an "aggrieved person" because "a telephone number the Government attributed to Michael Nelson was identified – by the government's admission – as a direct result of the interceptions beginning on March 27, 2017. As such, Nelson has standing to challenge all the interception authorizations in this matter."[23]

Troy James, a subject of interceptions of TARGET TELEPHONES 4, 5 and 6, argues essentially the same as Nelson with regard to standing: the phone number

---

[18] 18 U.S.C. § 2518(10)(a)(i)-(iii).
[19] *Id.* § 2510(11).
[20] *U.S. v. Martin*, 169 F.Supp.2d 558, 564 (E.D. La. 2001)(citing *United States v. Scasino*, 513 F.2d 47, 50 (5th Cir.1975) (quoting *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)); *see* S.Rep. No. 1097, 90th Cong., 2d Sess.
[21] *Id.* (citing *e.g., United States v. Gallo*, 863 F.2d 185, 192 (2d Cir.1988) (citing *Alderman*, 394 U.S. at 175–76 & n. 9, 89 S.Ct. at 967–68 n. 9; S.Rep. No. 1097, 90th Cong., 2d Sess)).
[22] *Id.* (citing *United States v. Garcia*, 1991 WL 120239 (S.D.N.Y. June 21, 1991) (citing *Gallo*, 863 F.2d at 192; *Alderman*, 394 U.S. at 171–72, 89 S.Ct. 961). *But see United States v. Marcello*, 508 F.Supp. 586, 602 n. 6 (E.D.La.1981)).
[23] Rec. Doc. No. 208-1 at 5 (citing *United States v. Giordano*, 416 U.S. 505 (1974)).

identified by the Government attributed to Troy James was identified "as a direct result of the interceptions beginning on March 27, 2017, of the incoming and outgoing calls to Telephones #4, #5, and #6, thus, Troy James has standing to challenge all the interceptions authorizations in this matter."[24]

Both Nelson and Troy James rely on the Supreme Court's decision in *United States v. Giordano*, wherein the Court held that, because the original interceptions failed to comply with the law, suppression of all later fruits of the poisonous tree was required.[25] However, as the Government points out, the facts of *Giordano* are distinguishable from those presented herein. In *Giordano*, the defendant was the target of the original wiretap order that was ultimately held unlawful.

The Court finds that the facts of this case are similar to those set forth in *United States v. Scasino*, wherein defendants sought to suppress Title III recordings that were the undisputed fruits of a prior illegal wiretap.[26] The Fifth Circuit concluded that the defendants lacked standing to challenge the prior wiretap primarily because they were not directly implicated by the wiretap.[27] The *Scasino* court adopted the standard set forth by the Fourth Circuit in *United States v. Gibson*, wherein the court concluded that "[t]he clear implication of [Section 2518(10)(a)] is that an 'aggrieved person' should not include one who is not implicated and against whom no one has made of proffer of information derived from the defectively authorized tap."[28]

---

[24] Rec. Doc. No. 215-1 at 5.
[25] 416 U.S. 505 (1974).
[26] 513 F.2d 47, 49 (5th Cir.1975).
[27] *Id.*
[28] 500 F.2d 854, 855 (4th Cir.1974).

Document Number: 50386
Page 7 of 20

In *United States v. Martin*, Martin moved for suppression of the fruits of conversations that were intercepted pursuant to Title III in an investigation into matters unrelated to the crimes charged against Martin.[29] The government had previously received authorization to intercept communications from the phone of Cecil Brown, referred to as the "Brown T-III."[30] Although none of the conversations intercepted pursuant to the Brown T-III incriminated Martin, one of his social conversations was intercepted.[31] The interceptions pursuant to the Brown T-III led to authorization to intercept communications on the phones of other targets of the investigation and, ultimately, in prosecuting Martin, the government sought to introduce nine conversations intercepted pursuant to the later T-III orders. The court noted that "none of the conversations captured on the Brown T-III are relevant to the criminal tax charges pending."[32]

Martin moved to suppress all wiretap interceptions, arguing that the Brown T-III wiretap was obtained in violation of Title III and the Fourth Amendment for lack of probable cause and a demonstration of necessity.[33] Thus, Martin argued, any evidence derived from the Brown T-III interceptions, including the conversations introduced against him in his criminal matter, must be suppressed.[34] The government argued that Martin lacked standing to challenge the validity of the Brown T-III because "Title III implicitly requires that the intercepted communication be incriminating to the interceptee who seeks to be

---

[29] *Martin*, 169 F.Supp.2d at 560.
[30] *Id.* at 561.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*

an 'aggrieved person' under the standing provision[,]" and [i]t [was] undisputed that Martin's intercepted phone conversation was in no way incriminating to him and gave the Government no impetus to investigate him with respect to the crimes charged in the current indictment."[35] The Government relied on the *Scasino* and *Gibson* decisions discussed above.

The court, however, distinguished these cases:

> Although *Scasino* and *Gibson* are undoubtedly supportive of the Government's position, they fall short of making the Government's point in this case due to a key factual distinction present in this case: Unlike Martin, the defendants in *Scasino* and *Gibson* were never intercepted on the illegal T–III surveillance that they sought to indirectly attack. Thus, those defendants did not meet one of the express statutory standing provisions like Martin does.[36]

The court noted that,

> the real inquiry would appear to be whether Title III would give Martin standing to suppress the specific Brown T–III conversations which did in fact provide probable cause for the subsequent surveillance that captured the conversations under attack in this motion. After all, the conversations Martin is trying to exclude in the instant motion are fruits of conversations to which Martin was not a party—**they are not fruits of Martin's intercepted phone call**. Other courts have recognized that an interceptee might very well have standing with respect to conversations in which he participates but lack standing as to other conversations, captured on the same wiretap, as to which he was not a party. *See, e.g., United States v. Plescia*, 773 F.Supp. 1068, 1077 (N.D.Ill.1991); *see also United States v. Holmes*, 521 F.2d 859 (1975), *vacated in part*, 537 F.2d 227 (5th Cir.1976) (en banc).[37]

Ultimately, the court held that Martin lacked standing to challenge the Brown T-III interceptions, from which all evidence against him was subsequently derived, because:

> Martin's argument, however, presupposes that Title III would treat every Brown T–III conversation equally for standing purposes such that one

---

[35] *Id.* at 564.
[36] *Id.* at 564-65 (internal citations omitted).
[37] *Id.* at 565.

serendipitous phone call intercepted during months of surveillance would give him standing to challenge the fruits of hundreds of hours of communications in which he had no privacy interest whatsoever. This broad interpretation is contrary to Fourth Amendment standing law which has been held to govern motions to suppress under Title III. Standing under the Fourth Amendment is narrowly construed to include only those whose privacy rights are actually violated. *Alderman*, 394 U.S. at 171–72, 89 S.Ct. at 965. Because Martin was not an interceptee in the Brown T–III conversations that provided probable cause for the subsequent surveillance and had no privacy interest in those conversations, he would have no standing to suppress them directly. Consequently, he cannot rely on their alleged illegality to suppress their fruits, *i.e.*, the nine conversations under attack in the instant motion.[38]

In the present case, none of the moving Defendants were the targets of the first application regarding TARGET TELEPHONE/TARGET TELEPHONE 1, and it is undisputed that no communications to or from Nelson, Travis James, Troy James, Hampton, Mansion or Murphy were intercepted. Thus, the facts of this case fall squarely under the reasoning and analysis of *Scasino* and *Gibson*. Accordingly, the moving Defendants lack standing to challenge the validity of the TARGET TELEPHONE/TARGET TELEPHONE 1 interceptions.

### B. Probable Cause

Although the Court has found that the moving Defendants lack standing to challenge the TARGET TELEPHONE/TARGET TELEPHONE 1 interceptions, in the alternative, the Court also addresses the challenges to probable cause.

Notably, a judge's decision to issue a wiretap order based on a determination that probable cause exists is entitled to great deference.[39] "When the judge authorizing a

---

[38] *Id.*
[39] *U.S. v. Little*, 2012 WL 489194 at *2 (W.D. La. Feb. 14, 2012)(citing *United States v. Edwards*, 124 F.Supp.2d 387, 398 (M.D.La. Aug. 22, 2000) (citing *United States v. Phillips*, 727 F.2d 392, 395 (5th Cir.1984)); *see also United States v. Tomblin*, 46 F.3d 1369, 1376 (5th Cir.1995) (stating that the decision to authorize a wiretap is reviewed for clear error)).

wiretap 'uses common sense and bases [his] finding on the entire picture presented to [him],' review of that decision is limited."[40] In fact, a judge's "determination is conclusive in the absence of arbitrariness."[41] Thus, this Court's task is to undertake an independent review of the sufficiency of the affidavit to ensure that the judge had a substantial basis for concluding that probable cause existed.[42]

The challenge to this affidavit focuses on Defendants' argument, and the Government's acknowledgement, that the confidential source providing information that formed the basis of the affidavit of probable cause to support the initial wiretap application was later deemed unreliable. Nelson argues that the affidavit supporting the wiretap application is "fatally flawed" due to the unreliable informant,[43] and notes that the Government "admits that not all of the information provided by CS has been fully corroborated."[44] Troy James makes essentially the same arguments.[45]

The Government maintains that the affidavit sets forth probable cause for the initial wiretap application, noting the difference between the unreliability of CS versus the reliability of the information CS provided that was corroborated. In the initial application, Hull was identified as a source of heroin and methamphetamine. CS described the vehicle driven by Hull as a red Jeep Cherokee and also provided the location of Hull's residence, information that was later corroborated by law enforcement.[46] Further, this CS was used in a controlled buy with Hull set up by federal law enforcement agents on

---

[40] *Id.* (quoting *United States v. Gonzales*, 866 F.2d 781, 786 (5th Cir.1989)).
[41] *Id.* (quoting *Gonzales*, 866 F.2d at 786 (quoting *United States v. Weinrich,* 586 F.2d 481, 487 (5th Cir.1978))).
[42] *Id.* (citing *Weinrich*, 586 F.2d at 437).
[43] Rec. Doc. No. 208-1 at 6.
[44] *Id.* at 7.
[45] Rec. Doc. No. 215-1 at 7-10.
[46] Rec. Doc. No. 252-1 at 29, ¶ 24.

February 6, 2017. Agents recorded and reviewed the calls and texts between Hull and CS leading up to the transaction. Agents supplied CS with the money to purchase methamphetamine from Hull, law enforcement observed CS meet Hull at the agreed upon location, and CS returned from this meeting with the methamphetamine purchased from Hull. Additionally, this transaction was videotaped by law enforcement. A second controlled buy between Hull and CS took place on February 13, 2017. This transaction was set up by law enforcement, observed by law enforcement, and CS returned with the methamphetamine and heroin he was instructed to buy from Hull.[47]

The affidavit is replete with instances of information provided by CS that was later corroborated by law enforcement via surveillance, audio, and video recording. That CS was later deemed unreliable does not render the information CS provided, which was corroborated independently by law enforcement, unreliable for purposes of providing probable cause.

DEA Task Force Officer Charles Scott Courrege did, indeed, attest: "Affiant has determined that CS is **no longer** a reliable source of information for law enforcement purposes." But the very next statement provides: "However, the information provided by the CS through March 10, 2017, has been corroborated (to the extent possible) by independent sources and was used to form the basis of probable cause for this application."[48]

In *United States v. Little*, Little was charged with ten co-defendants with various drug trafficking offenses, and he moved to suppress wiretap interceptions, arguing that

---

[47] *Id.* at 37-38, ¶¶ 46-49.
[48] Rec. Doc. No. 252-1 at 28, ¶ 22 (emphasis added).

the supporting affidavit lacked probable cause.[49] Investigators had developed two confidential sources familiar with the drug operations of the defendants, and two undercover agents made controlled drug purchases from a co-defendant which was demonstrated by recorded conversations and text messages.[50] Thus, based on information received from confidential sources, undercover agents, surveillance, controlled drug purchases, and pen registers, a wiretap application was sought and granted for the interception of communications from the phone number of a co-defendant. Little was identified as a "target interceptee," and conversations between Little and the co-defendant were intercepted.[51]

Little argued the wiretap affidavit lacked probable cause because, *inter alia*, there was insufficient evidence tying him to the drug conspiracy, few references were made to him in the supporting affidavit, and statements implicating him were made without factual support for accuracy.[52] The court rejected these arguments, finding that certain challenged statements made by confidential sources were also corroborated by a co-defendant herself.[53] The court also found that the affidavit was not required to contain numerous references to Little since the application was to intercept communications from the phone of a co-defendant, not Little.[54]

The court quoted the Fifth Circuit's directive that: "We must be mindful that probable cause is the sum total of layers of information and the synthesis of what police

---

[49] 2012 WL 489194 at *1.
[50] *Id.*
[51] *Id.*
[52] *Id.* at *2-*3.
[53] *Id.* at *3.
[54] *Id.*

have heard, what they know, and what they observed as trained officers. We weigh not individual layers but the laminated total."[55] The court found that "Little's argument ignores the totality of the facts and circumstances set forth in Trooper Haynes's affidavit. Even if his actions, standing alone, were lawful, there still existed the probability that he was acting unlawfully. As such, Little's innocent explanations do not undermine the probable cause finding."[56]

The court also rejected Little's claim that the confidential sources providing the information were unreliable:

> Finally, with respect to Little's challenge to the reliability of the two confidential sources, the Court notes that according to the affidavit, CS 1 and CS 2 had been providing verified and corroborated information to law enforcement for the previous eleven and eight months, respectively. As the Fifth Circuit has explained, "**mutually enforcing and corroborative information from confidential sources is a strong indicator of probable cause even when the individual reliability of the sources is not clearly established**." *United States v. Weinrich*, 586 F.2d 481, 490 (5th Cir.1978). Lastly, while the two confidential sources provided helpful information to the investigation, it is imprudent to suggest that they, alone, established probable cause. Rather, the **probable cause supporting the issuance of the wiretap was based in large part upon several controlled drug buys between the undercover agents and Thompson, along with surveillance and pen register information**. This clear and direct evidence demonstrates firmly that an individual "is committing, has committed, or is about to commit a particular offense."[57]

Following this reasoning, the Court finds that the supporting affidavit for the initial wiretap application provided probable cause for the authorization. The fact that CS was later deemed unreliable by the Government does not render all prior information provided

---

[55] *Id.* (quoting *United States v. Weinrich*, 586 F.2d 481, 490 (5th Cir.1978) (quoting *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir.1978)))(internal quotation marks omitted).
[56] *Id.*
[57] *Id.* at *4 (emphasis added).

by CS unreliable, particularly where much of the information provided by CS regarding Hull was verified and corroborated by independent police investigation as set forth in great detail in Officer Courrege's affidavit.

Troy James' argument that the Government lacked probable cause to identify him as a target for TARGET TELEPHONES 4 and 5 is likewise without merit for the reasons set forth above. The law is clear that, although the Government is required to identify respondents in a wiretap application, "its failure to do so did not warrant suppression because 'the failure to identify additional persons who are likely to be overheard engaging in incriminating conversations could hardly invalidate an otherwise lawful judicial authorization.'"[58]

**C. Necessity**

The moving Defendants also challenge the validity of the wiretap authorization based on the alleged failure by the Government to demonstrate the necessity of this method of surveillance as required by Title III. Specifically, Nelson contends the investigation was fruitful without wiretaps based on the information agents obtained through CS which led to a great deal of evidence derived through traditional investigative procedures.[59]

Before a wiretap may be authorized, the Government must show, and a court must find, that "other investigative procedures have been tried and failed" or that "they reasonably appear to be unlikely to succeed if tried or to be too dangerous."[60] However,

---

[58] *United States v. Diaz*, 2009 WL 348284 at *5 (quoting *United States v. Donovan*, 429 U.S. 413, 435, 439 (1977)).
[59] This is a curious argument in light of Nelson's contention earlier in this same motion that the wiretap authorization is defective based on the unreliability of CS.
[60] 18 U.S.C. § 2518(1)(c), (3)(c).

"[t]he government is not required to show that it has exhausted every conceivable option before a wiretap can be approved."[61]

The wiretap authorization was also challenged in *Little* based on the allegation that the government failed to establish the necessity of the wiretap. The *Little* court explained the nature of this requirement set forth in 18 U.S.C. § 2518:

> That Section requires that each affidavit in support of an application for a wiretap contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This "necessity" requirement was included in the statute in an effort to prevent wiretapping from being employed in cases where traditional investigative techniques are sufficient. *See United States v. Webster*, 734 F.2d 1048, 1055 (5th Cir.1984). However, establishing necessity does not require a showing that "every other imaginable mode of investigation would be unsuccessful." *United States v. Diadone*, 558 F.3d 775, 778 (5th Cir.1977). Indeed, as courts have repeatedly held, the Government need not exhaust every alternative before a wiretap is proper. *See United States v. Bankston*, 182 F.3d 296, 305 (5th Cir.1999). Rather, the affidavit must simply explain the prospective or retrospective failure of investigative techniques, *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir.1978), and courts should make a common sense evaluation of the statements in the affidavit to determine whether necessity has been established. *See United States v. Guerra–Marez*, 928 F.2d 665, 670 (5th Cir.1991).[62]

The Court has reviewed the affidavit and, applying the law to the facts of this case, the Court finds that the Government has met its burden of demonstrating the necessity of the wiretaps as one of many tools utilized to investigate this alleged complex drug trafficking organization. Officer Courrege attested to the following:

> 64. Your Affiant believes the interception of wire and electronic communications over the **TARGET TELEPHONE** will enable the

---

[61] *United States v. Johnson*, 393 Fed. Appx. 240, 242 (5th Cir. 2010)(citing United States v. Kelley, 140 F.3d 596, 605 (5th Cir.1998).
[62] *Little*, 2012 WL 489194 at *5.

Document Number: 50386

government to further the goals and objectives of this investigation. Specifically, these include:

a. Discovering the full scope and identification of key personnel involved in illegal drug trafficking on behalf of **HULL** and his organization;

b. Discovering the identities of all suppliers of methamphetamine, heroin, cocaine, and/or other drugs or controlled substances;

c. Discovering the identity of the main customers of the **HULL** organization, and others yet unknown;

d. Discovering all stash house locations where methamphetamine, heroin, cocaine, and/or other drugs are stored prior to distribution;

e. Discovering the management and disposition of proceeds generated by the organization's narcotics trafficking; and

f. Obtaining admissible evidence, which demonstrates beyond a reasonable doubt that **HULL, KINAMORE, MASON, YOUNG, TAYLOR, IMPSON, LIPSCOMB, FNU LNU,** and any later identified subjects, committed the alleged violations of law set forth herein.

65. Interception of wire and electronic communications over the **TARGET TELEPHONE** is necessary in this matter because normal investigative techniques have been tried and have failed to fully achieve the goals and objectives of this investigation, or appear reasonably unlikely to succeed if tired [sic].

66. The following is a list of the investigative techniques that have been used or considered thus far in this investigation. Details about the use of each technique with regards to **HULL,** the success or failure of the technique, and what the techniques has accomplished or failed to accomplish with regards to the goals and objectives of this investigation are discussed. When a technique was not employed, an explanation is also included.[63]

Officer Courrege went on to describe the following investigation techniques, and he explained in great detail which techniques have been useful and why some techniques have failed, or would fail, to aid the investigation. This list includes: confidential sources; controlled purchases; physical surveillance; undercover agents; search warrants; interviews/grand jury subpoenas/immunity; trash searches; attempted use of other surveillance techniques; pen registers, trap/trace devices, toll analysis, and subscriber information; mail cover requests; financial investigations; other wiretaps.[64] In explaining each technique, Officer Courrege explained how the technique, if employed, had been helpful and/or why it was insufficient to provide enough supporting proof to accomplish the goals of the investigation.

For example, although CS provided information helpful to the investigation, it was explained that the use of the CS would not likely succeed in uncovering evidence identifying the source of supply, stash houses, and methods and manner of delivery of controlled substances from one location to another.[65] As for physical surveillance, Officer Courrege explained that it "often leaves investigation with insufficient evidence to prove

---

[63] Rec. Doc. No. 252-1 at 45-46.
[64] *Id.* at 46-60.
[65] *Id.* at 48, ¶ 75.
Document Number: 50386

the purpose of the meetings or other activities."[66]  Further, Officer Courrege explained that the subjects of this investigation "are extremely cautious and aware of law enforcement surveillance," and they "actively conduct counter surveillance and 'heat checks' to detect law enforcement."[67]

Officer Courrege explained that traffic stops would alert the subjects to the presence of law enforcement and likely result in finding the subjects in possession of smaller amounts of drugs that would not demonstrate the majority of their supply and would further require arrests that would impede the greater goals of the investigation.[68] Officer Courrege also explained that undercover agents would be unlikely to infiltrate this organization "at a high enough level to identify all members of the conspiracy" because distributors would be unlikely to conduct drug transactions with unknown individuals.[69] These are just a few of the many reasons presented by Officer Courrege that demonstrate the necessity of the wiretap to the overall goal of the investigation.

Despite the helpfulness of many of the above techniques to the investigation, Officer Courrege attested that "only wire and electronic interceptions of the TARGET TELEPHONE will permit investigators to determine the precise nature of the illegal activity being discussed and to gather critical evidence concerning such activity."[70]  Judge Jackson reviewed this affidavit and found that it complied with Title III requirements as demonstrated by the *Order* authorizing the interception of communications at issue

---

[66] *Id.* at 48-49, ¶ 76.
[67] *Id.* at 49, ¶ 77.
[68] *Id.* at 50-51, ¶ 83.
[69] *Id.* at 51-52, ¶ 87.
[70] *Id.* at 59, ¶ 115.

Document Number: 50386

Page 19 of 20

herein.[71] This Court's independent review of the supporting affidavit confirms that the Government adequately demonstrated the necessity of the wiretap to achieving the goals of the investigation.

## IV. CONCLUSION

For the reasons set forth above, the *Motions to Suppress Wiretap Interceptions* filed by Nelson[72] and Troy James,[73] and adopted by co-Defendants Travis James, Mansion, and Hampton,[74] are hereby DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana this 11th day of March, 2019.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[71] Rec. Doc. No. 252-2.
[72] Rec. Doc. No. 208.
[73] Rec. Doc. No. 215.
[74] Rec. Doc. Nos. 229, 231, 232, & 233.
Document Number: 50386