**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | 18-21-SDD-RLB |
| TRAVIS R. JAMES, ET AL. | |

**RULING**

This matter is before the Court on the *Motion to Suppress Search of Premises and Property* filed by Defendant Travis R. James ("Travis James").[1] The Government has filed a *Response*[2] to this motion. For the following reasons, Travis James' *Motion* is DENIED.

**I.  BACKGROUND**

This criminal action arises out of an *Indictment* charging fifteen Defendants in a drug conspiracy to distribute and to possess with the intent to distribute illegal narcotics between around January 2015 and continuing until around January 2018 in the Middle District of Louisiana and elsewhere.[3] During the investigation that led to the instant *Indictment*, the Drug Enforcement Administration (DEA) applied to the Middle District of Louisiana for search warrants pertaining to six different locations associated with the Defendant:

1) 17066 Barque Drive, Prairieville, Louisiana 70769[4]

2) 9242 Barringer Foreman Road, Units 68 & 71, Baton Rouge, Louisiana 70817[5]

---

[1] Rec. Doc. No. 190.
[2] Rec. Doc. No. 205.
[3] Rec. Doc. No. 1. *See Superseding Indictment*, Rec. Doc. No. 334.
[4] Rec. Doc. No. 205-1.
[5] Rec. Doc. No. 205-2.
51105

3) 13151 Woodridge Avenue, Baton Rouge, Louisiana 70809[6]

4) 16633 Highland Club Avenue, Baton Rouge, Louisiana 70817[7]

5) 222 Emerald Road, Baton Rouge, Louisiana 70810[8]

6) Chase Bank Safety Deposit Box in the name of Travis James, 6556 Siegen Lane, Baton Rouge, Louisiana 70809.[9]

The applications were supported by an affidavit by Charles Scott Courrege, a Task Force Officer in the Baton Rouge District Office of the DEA.[10] Magistrate Judge Erin Wilder-Doomes issued all six warrants on June 12, 2017, and the warrants were executed the next day. The resulting searches turned up evidence that formed, in part, the basis of the instant *Indictment*. It is that evidence that Travis James now seeks to suppress.

Travis James contends that the affidavit submitted in support of the search warrant applications was "bare bones"[11] and offered "absolutely no tangible evidence of a crime, actual controlled substance, verified or true personal knowledge of [the] Affiant."[12] The "mere speculation, conjecture, contrived opinion, and suspicion"[13] contained in the affidavit could not possibly have provided sufficient information for the issuing judge to make a determination of probable cause, he argues.

The Government opposes the *Motion to Suppress*, arguing that far from being "bare bones," the affidavit in support of the search warrant applications was "sixty-two pages long and based on a long-term Drug Enforcement Administration (DEA)

---

[6] Rec. Doc. No. 205-3.
[7] Rec. Doc. No. 205-4.
[8] Rec. Doc. No. 205-5.
[9] Rec. Doc. No. 205-6.
[10] Rec. Doc. No. 205-7.
[11] Rec. Doc. No. 190-1, p. 2.
[12] *Id.*
[13] *Id.*

51105

investigation of the defendant, [involving] wire and electronic surveillance of the defendant along with covert surveillance by DEA agents as well as other investigative techniques."[14] In short, the Government claims, "the affidavit provided extensive probable cause to support the issuance of each warrant."[15]

Additionally, the Government questions Travis James' standing to contest the validity of the searches at 13151 Woodridge Avenue and 222 Emerald Road, since James does not have "a possessory interest" in those properties and, as such, "would have to assert standing as a guest in the residence."[16] Per the Government, James would be hard-pressed to assert standing as a guest because he was not present at either of the two properties at the time of the search.

## II. LAW

### A. Motions to Suppress and the Warrant Requirement

Generally, "[t]he proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights."[17] Jurisprudence from the Supreme Court and the United States Court of Appeals is "clear and unequivocal: the Fourth Amendment requires that no warrant issue but upon probable cause, as determined by a neutral and detached magistrate."[18] As a general matter, "[p]robable cause exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a

---

[14] Rec. Doc. No. 205, p. 1.
[15] Rec. Doc. No. 205, p. 2.
[16] Rec. Doc. No. 205, p. 3.
[17] *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993)(quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)).
[18] *Crane v. Texas*, 759 F.2d 412, 426 (5th Cir. 1985) (citing, e.g., *United States v. United States Dist. Court for the Eastern Dist. Of Mich.*, 407 U.S. 297, 316-18, 92 S.Ct. 2125 at 2136-37 (1972); *Chimel v. California*, 395 U.S. 752, 761, 89 S.Ct. 2034, 2039 (1969)).
51105

prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of a crime."[19] "Assuming no problems exist with respect to time," an affidavit meets the bare minimum if it evidences a reasonable link between (1) the relevant criminal activity, (2) the things to be seized, and (3) the place to be searched.[20] A court must apply the Fourth Amendment's requirement of probable cause "not according to a fixed and rigid formula, but rather in the light of the totality of the circumstances made known to the magistrate."[21] A magistrate's determination of probable cause "should be paid great deference by reviewing courts."[22]

Courts employ a two-step process to evaluate a defendant's motion to suppress when a search warrant is involved. First, the court must determine whether the *Leon* good faith exception to the exclusionary rule applies.[23] The *Leon* good faith exception provides that evidence is admissible when it is obtained by law enforcement officials acting in objectively reasonable good faith reliance upon a search warrant, even if the affidavit on which the warrant was based was insufficient to establish probable cause.[24] Due to the "strong preference for warrants,"[25] the issuance of a warrant by a magistrate "normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant."[26] However, an officer will not be able to claim objective good faith when, among other reasons: (1) the issuing magistrate was misled by

---

[19] *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006).
[20] Wayne R. LaFave, Search & Seizure, § 3.7(d) (5th ed. 2012-2015).
[21] *Massachusetts v. Upton*, 466 U.S. 727, 728, 104 S. Ct. 2085 (1984).
[22] *Gates*, 462 U.S. at 236 (internal quotations omitted) (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).
[23] *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999) (citing *United States v. Leon*, 468 U.S. 897 (1984)).
[24] See 468 U.S. at 922–23; *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988).
[25] *Leon*, 468 U.S. at 914, 922.
[26] *Craig* at 822.

51105

information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth, or (2) an officer relied on a warrant based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable.[27]

If the good faith exception does not apply, then the court proceeds to the second step in the analysis and determines whether the warrant was supported by probable cause.[28] If the good faith exception applies, however, the Court need not evaluate probable cause.[29] Here, the Court finds that the good faith exception applies and that, alternatively, the search warrant affidavit was sufficient to establish probable cause as to 17066 Barque Drive, 9242 Barringer Foreman Road Units 68 & 72, 16633 Highland Club Road, and the Chase Bank Safety Deposit Bank. Therefore, the *Motion to Suppress* is denied as to those locations. Likewise, the Court finds that the *Motion to Suppress* should be denied with respect to 13151 Woodridge Avenue and 222 Emerald Road, since Travis James has not demonstrated that he has standing to contest the searches of those locations.

**B. Standing**

The Supreme Court has held that Fourth Amendment rights are violated only when the challenged conduct invades one's legitimate expectation of privacy, not that of a third party.[30] Further, the Fourth Amendment does not protect merely subjective expectations of privacy, only those "expectation[s] that society is prepared to recognize as

---

[27] *United States v. Rojas-Alvarez*, 451 F.3d 320, 330 (5th Cir. 2006).
[28] *United States v. Froman*, 355 F.3d 882, 888 (5th Cir. 2004).
[29] *Id.*
[30] *United States v. Payner*, 447 U.S. 727, 731 (1980).
51105

'reasonable.'"[31] "A defendant who fails to demonstrate a sufficiently close connection to the relevant places or objects will not have standing to a claim that they were illegally searched or seized."[32]

## III. ANALYSIS

The Defendant does not directly address the good-faith exception to the warrant requirement in his *Motion to Suppress*.[33] His assertion that the affidavit in support of the warrant applications was "bare bones" is perhaps an implied argument against the application of the good faith exception. However, the Court finds that the affidavit in question simply is not bare bones, nor does it resemble affidavits that courts have, in other cases, found to be bare bones.

The affidavit at issue in *United States v. Brown*[34] was a "brief, one-page"[35] document that "did not provide any details about the investigation" of the individual whose residence was to be searched. Further, the affidavit "provided no information linking the drug-trafficking investigation to [his] residence."[36] In fact, the Fifth Circuit found that the affidavit "did not present any evidence, either direct or inferential, linking the investigation to [the defendant's] home."[37] The affiant in *Brown* concluded his warrant application with the conclusory statement that "it is also believed that additional narcotics and paraphernalia are located at [the defendant's] residence."[38]

---

[31] *Katz v. United States*, 389 U.S. 347, 361 (1967).
[32] *United States v. Thompson*, No. CR 14-153, 2016 WL 3476714, at *5 (E.D. La. June 27, 2016)(citing *United States v. Lewis*, 40 F.3d at 1333 (1st Cir. 1994)).
[33] Rec. Doc. No. 190-1.
[34] 567 Fed.Appx. 272 (5th Cir. 2014),
[35] *Id.* at 280.
[36] *Id.* at 281.
[37] *Id.*
[38] *Id.*

51105

By contrast, the affidavit in support of the warrant applications in this case includes sixty-two pages of investigative history derived from wiretapped communications, physical surveillance, subpoenas, and other techniques. The affidavit sets forth in detail the procedures used in establishing not only Defendant's possible criminal activity in connection with the locations, but also the likelihood that those locations contained the articles sought. Thus, the Court concludes that the *Leon* good faith exception applies because the affidavit gave the law enforcement officers who executed the warrants no reason to suspect that it was facially deficient, false, reckless, or otherwise lacking in indicia of probable case. Having found that the good faith exception applies, the Court will nevertheless proceed to address the sufficiency of the probable cause as to each warrant application separately.

### A. 17066 Barque Drive, Prairieville, Louisiana[39]

The affidavit in support of the warrant application for 17066 Barque Drive states that the DEA had identified that address as "the primary 'stash' house utilized by the JAMES DTO."[40] Based on intercepted communications, physical surveillance, and location data from Target Telephone 4, the DEA had learned that Travis James owned the residence and "regularly spen[t] overnight hours there."[41] The affiant also stated that Travis James had, on two occasions, purchased cocaine and then "proceeded to the residence and both counted money and cooked powder cocaine into crack cocaine."[42]

---

[39] Rec. Doc. No. 205-1.
[40] Rec. Doc. No. 205-7, p. 10, ¶ 27.
[41] Rec. Doc. No. 205-7, p. 11.
[42] Rec. Doc. No. 205-7, p. 11.
51105

The affiant's belief that "there is evidence of criminal activity located at this residence"[43] is further supported by the following:

- Intercepted telephone conversations between Travis James and Joshua Mansion on May 8, 2017, which, when cross-referenced with telephone location data for James' phone, indicated that Travis James was cooking cocaine at 17066 Barque Drive on that day;[44]

- Physical surveillance indicating that on May 21, 2017, Travis James picked up several co-defendants in possession of a large amount of cocaine from the Greyhound bus station in Baton Rouge and then proceeded to 17066 Barque Drive, where, the affiant concluded "Travis James stores cocaine";[45]

- Later that same day, physical surveillance and intercepted telephone communications indicating that someone called Travis James and requested various quantities of "hard" and "soft." Travis James advised the caller to meet him at Wal-Mart; thereafter, a man believed to be Travis James left 17066 Barque Drive and drove to Wal-Mart;[46]

- Intercepted telephone communications on June 4, 2017, showing that while located at 17066 Barque Drive, Travis James discussed the presence of a scale, Ziploc bags, and money at that location;[47]

---

[43] Rec. Doc. No. 205-7, p. 27, ¶ 85.
[44] Rec. Doc. No. 205-7, pp. 11-13.
[45] Rec. Doc. No. 205-7, p. 19.
[46] Rec. Doc. No. 205-7, pp. 19-20.
[47] Rec. Doc. No. 205-7, p. 20.
51105

- On June 7, 2017, while telephone location data indicated that Travis James was at 17066 Barque Drive, James told someone in the course of a phone call that he was at "the bank."[48]

Overall, the attestations of the affiant demonstrated a nexus between 17066 Barque Drive and the suspected drug trafficking activity. Per the affiant, multiple investigative techniques had established a connection between the activities of the James DTO and the location to be searched. Presented with the above facts, a reasonable person would find probable cause to believe that the Defendant was storing drugs, drug cooking supplies, and money in this location.

In *United States v. Rojas-Alvarez*,[49] the Fifth Circuit affirmed the denial of a motion to suppress under similar facts. There, the defendant called for the suppression of evidence obtained during a search of a residence where the affidavit in support of the warrant application described certain intercepted phone conversations where the defendant discussed his need to obtain more heroin to fill an order and physical surveillance showing that the defendant "traveled directly from his home to the [residence to be searched] and then to the prearranged location of [a drug buy]".[50] The search was valid, the Fifth Circuit found, because "the affidavit sets out a sufficient basis to find probable cause that drugs or evidence of drug trafficking were located at [the residence to be searched]."[51] Likewise here, the affidavit went beyond merely conclusory or generalized assertions; it provided specific reasons to believe that evidence of drug

---

[48] Rec. Doc. No. 205-7, p. 21.
[49] 451 F.3d 320 (5th Cir. 2006).
[50] *Id.* at 330.
[51] *Id.* at 331.
51105

trafficking activity would be found at 17066 Barque Drive. The *Motion to Suppress* as to this address is therefore DENIED.

### B. 9242 Barringer Foreman Road, Units 68 and 71[52]

This is the address for a StorSafe self-storage facility that the Government contends was the location of drug trafficking activities by the James DTO. In the DEA's application for a warrant to search these storage units, which were registered to Travis James and Belinda Carter, a girlfriend of Travis James, the Task Force Officer expressed his belief that the units were used "to conduct cocaine transactions" and to store "sums of currency and cocaine inside of vehicles that are stored at the facility."[53] That belief was based on the following:

- Photographs from Travis James' Instagram account, showing him posed in front of and inside a storage facility "in possession of large amounts of U.S. Currency,"[54] as well as photographs depicting "two Mercedes Benz vehicles in front of the open door of unit 68";[55] when agents cross-referenced the photographs with Units 68 and 71 at StorSafe, they concluded that those units were the storage units depicted in the Instagram photographs.

- On April 28, 2017, agents conducting physical surveillance at the storage facility observed Travis James and co-defendant Henry Hayes engaged in "contact at the window of [a] vehicle consistent with a hand-

---

[52] Rec. Doc. No. 205-2.
[53] Rec. Doc. No. 205-7, p. 28, ¶ 89.
[54] Rec. Doc. No. 205-7, p. 27.
[55] Rec. Doc. No. 205-7, p. 27.

51105

to-hand drug transaction in that something was exchanged between the two subjects."[56] Based on that observation and subsequent intercepted communications from that same day where Hayes discussed the color of the new supply of cocaine, the affiant concluded that "Hayes was likely re-supplied with cocaine during the meeting with Travis James"[57] at the storage unit.

- On May 9, 2017, after members of the James DTO were intercepted discussing a potential sale of cocaine to a group of "Mexicans," agents conducting physical surveillance at the storage unit observed Travis James and "a Hispanic male" rendezvousing at Unit 71. James called his co-defendant D'Mari Harding and told him to "bring that bag of money" to "the storage."[58] Then, agents observed the Hispanic male "carrying the brown bag that had been delivered by Harding."[59] Later that day, a call from Travis James to co-defendant Yascia LaFrance was intercepted, wherein James described how he had purchased cocaine from "the Mexicans" and was going to "get in the kitchen" to "cook it."[60]

- Intercepted communications from May 23, 2017, wherein Travis James expressed concern about the broken and partially open door on Unit 68, discussing the need to move the Oldsmobile Cutlass stored there to

---

[56] Rec. Doc. No. 205-7, p. 29.
[57] *Id.*, ¶ 93.
[58] Rec. Doc. No. 205-7, p. 31.
[59] Rec. Doc. No. 205-7, p. 31.
[60] Rec. Doc. No. 205-7, p. 32.
51105

another unit because "I got all that money in that mother fucker man . . ."[61]

- Physical surveillance on June 2, 2017, where agents observed Travis James, Troy James, and a subject believed to be co-defendant Joshua Mansion moving vehicles around at the storage unit, specifically moving an "unidentified object" from Unit 68 to Unit 71. The movements led the affiant to conclude that Travis James had "removed money from the trunk of the vehicle and returned it to the unit."[62]

- An intercepted call from co-defendant Henry Hayes to Travis James where they discussed "brown" and agreed to meet "by the spot, by the storage"; subsequently, agents conducting physical surveillance saw Troy James and Hayes enter Units 68 and 71. Hayes exited the unit "carrying a plastic bag." On that basis, the affiant concluded that because the men were "not observed carrying anything into the storage units . . . the cocaine that Hayes left with was located in the units before either subject arrived."[63]

The above facts present a compelling nexus between the StorSafe storage units and the instrumentalities and fruits of criminal activity. Multiple investigative modalities resulted in the above facts, which, this Court finds, would lead a reasonable person to believe that the Defendant was storing money and drugs in the storage units.

---

[61] Rec. Doc. No. 205-7, p. 33.
[62] Rec. Doc. No. 205-7, p. 34.
[63] Rec. Doc. No. 205-7, p. 35.
51105

### C. 16633 Highland Club Avenue, Baton Rouge, Louisiana

The affidavit in support of the warrant application for this address indicates that Belinda Carter, the "long-time girlfriend"[64] of Travis James, resided there. The home was owned by Travis James, who purchased it in 2016. Per the affiant, telephone location data for Travis James' telephone indicated that James was present at the residence "nearly every day, and sometimes for the entire overnight period."[65]

It was the contention of the affiant that "there is evidence of criminal activity located at this residence, specifically documents and other items evidencing the crimes of Money Laundering and Conspiracy to Distribute Controlled Dangerous Substances."[66] That supposition was based on intercepted telephone communications between Carter and Travis James where the couple discussed various bank accounts, credit or debit cards, and car payments. Because the address on Carter's driver's license was 16633 Highland Club Avenue, and because Travis James provided the same address in his previous dealings with Telco Federal Credit Union,[67] the affiant believed that "correspondence from banks . . . would likely be sent to 16633 Highland Club Avenue."[68] Further, the affiant concluded that the money in these accounts was "derived from drug proceeds,"[69] because Carter had "very little reported income herself." Further, the affiant stated that, based on the contents of intercepted telephone communications, Carter had "knowledge of Travis James' drug trafficking"

---

[64] Rec. Doc. No. 205-7, p. 44.
[65] Rec. Doc. No. 205-7, p. 47.
[66] Rec. Doc. No. 205-7, p. 50.
[67] Rec. Doc. No. 205-7, p. 44.
[68] *Id.* at p. 49.
[69] Rec. Doc. No. 205-7, p. 49.

51105

and was "engaged in concealing the source of assets" by "placing vehicles in her name" and "paying bills out of accounts in her name."[70] The above facts made it sufficiently probable that evidence of criminal activity would be found at Belinda Carter's residence.

### D. Safety Deposit Box at Chase Bank

The affidavit in support of the warrant application for Travis James' safety deposit box at Chase Bank detailed the following:

- In a May 13, 2017 phone call with Belinda Carter, Travis James told her, "say something happen to me bruh I got that safety deposit box with 200 grand . . . That shit for y'all . . . when you thinking the feds gonna get me . . ."[71]

- In another call later that same day, Travis James elaborated that "I got money in the safety deposit box . . . if them bitches come get me, you rush and take that money out the bank, the safety deposit box . . ."[72]

- Because James said that he was "at Chase"[73] while discussing the safety deposit box with Yascia LaFrance on May 11, 2017, the affiant concluded that the safety deposit box was located at Chase Bank. A subpoena was issued to Chase Bank, which confirmed that Travis James had an account and a safety deposit box at the Chase branch located at 6556 Siegen Lane, Baton Rouge, Louisiana 70809.[74]

---

[70] Rec. Doc. No. 205-7, p. 45.
[71] Rec. Doc. No. 205-7, p. 56.
[72] Rec. Doc. No. 205-7, p. 57.
[73] Rec. Doc. No. 205-7, p. 60.
[74] Rec. Doc. No. 205-7, p. 60.

51105

Based on the above, the affiant concluded that "there is evidence of criminal activity located at in the box [sic], specifically U.S. currency, which is evidencing the crimes of money laundering and conspiracy to distribute controlled dangerous substances."[75] The Court finds that Travis James' own intercepted statements illustrate the nexus between the safety deposit box and his alleged drug trafficking activities, since James explicitly told Belinda Carter that it contained money for her to use if the "feds" came to get him. That conversation, along with the other information about Travis James' banking and cash flow habits outlined by the affiant with respect to the application to search Carter's residence, evidenced a reasonable link between the alleged criminal activity and the location to be searched.

### E. 13151 Woodridge Avenue, Baton Rouge, Louisiana, 70817 and 222 Emerald Road, Baton Rouge, Louisiana, 70810

The Government argues that Defendant lacks standing to challenge the search of these two locations because they belong to his co-defendants, not him, and he was not present at the time of the searches.[76] Courts in the Fifth Circuit use a two-pronged test to determine whether a defendant has standing to challenge a search or seizure: (1) "whether the defendant can establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized," and (2) "whether that expectation of privacy is one which society would recognize as objectively reasonable."[77] To be "reasonable," the expectation of privacy must have a basis

---

[75] *Id.*
[76] Rec. Doc. No. 205, p. 3.
[77] *United States v. Wise*, 877 F.3d 209, 218 (5th Cir. 2017) (citing *United States v. Riazco*, 91 F.3d 752, 754 (5th Cir. 1996)).
51105

outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.[78]

In some circumstances, a person may have a legitimate expectation of privacy inside a home that he does not own.[79] However, "one who is merely present with the consent of the householder" does not.[80] The party making a Fourth Amendment challenge has the burden of establishing standing.[81] Travis James' *Motion* does not address standing or provide any facts or argument to establish his standing with respect to these two residences. James does not controvert the Government's assertions that he had no possessory interest in these residences and that he was not present at the time of the search. Therefore, the *Motion to Suppress* is denied as to 13151 Woodridge Avenue and 222 Emerald Road because Defendant has not demonstrated that he has standing to challenge those searches.

## IV. CONCLUSION

For the reasons set forth above, the *Motion to Suppress*[82] is hereby DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana this 28th day of May, 2019.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[78] *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).
[79] See *Minnesota v. Olson*, 495 U.S. 91, 96-100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).
[80] *Carter*, 525 U.S. at 90, 119 S.Ct. 469 (individuals present in a home for the purpose of packaging cocaine had no reasonable expectation of privacy and were "essentially present for a business transaction and were only in the home for a matter of hours").
[81] See *United States v. Hernandez*, 647 F.3d 216, 219 (5th Cir. 2011).
[82] Rec. Doc. No. 190.
51105